**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAYQUON MASSEY, | ) | |
| | ) | Civil Action No. 16 – 345 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| TOM MCGINLEY, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION[1]

Pending before the Court is a Petition for Writ of Habeas Corpus ("the Petition") filed by Petitioner Jayquon Massey ("Petitioner") pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 17.) Petitioner, through counsel, challenges his judgment of sentence of life in prison without parole imposed following his conviction for first-degree murder and other related offenses. *See* Commonwealth v. Massey, CP-02-CR-0003771-2008 (Ct. Common Pleas Allegheny Cty.)[2] For the reasons stated herein, his Petition will be dismissed as untimely, and, in the alternative, denied.

### A.    Factual and Procedural History

The trial court set forth the facts of this case as follows:

. . . .  The incident in question occurred on November 21, 2007, at approximately 6:15 PM at a bus stop on the north side area of the city of

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. *See* ECF Nos. 6 & 8.

[2] The docket sheet for Petitioner's criminal case can be found online at https://ujsportal.pacourts.us and can also be found on the docket at ECF No. 22-1, pp.1-14.

Pittsburgh. The victim was struck in the neck by a bullet fired by the defendant, while she and her boyfriend were walking from the bus stop with their Thanksgiving groceries. The defendant had fired at a burgundy SUV that had driven by. The general facts are as follows: The defendant would visit this north side neighborhood on a daily basis because his girlfriend at the time had lived there. The defendant knew the victim as well as the victim's children, given his testimony that the victim was his cousins' mom. The defendant on the day prior to the incident had been in this neighborhood with a friend and was robbed at gunpoint by unidentified persons in a burgundy SUV. The following evening (November 21, 2007) the defendant was again in this north side neighborhood. The victim's 14-year-old son had observed and encountered the defendant in the neighborhood every day, and on the night of the incident he observed a burgundy Escalade which he had seen the last several days in the area. He testified that the driver of the burgundy Escalade at some point got out of the vehicle and was taunting the defendant. The 14-year-old also testified that after the vehicle had passed, the defendant was in the middle of the street trying to shoot at the vehicle. The witness testified that the defendant had said his gun had jammed and did not discharge. At one point, the defendant asked to use his cell phone. The defendant denied the allegations that he attempted to shoot at the vehicle while standing in the middle of the street or that the gun had jammed. Subsequently, when the vehicle passed again the defendant fired shots that ultimately struck the innocent victim across the street. Various witnesses testified that they heard multiple shots fired. Their recollections varied from four to six shots. The Pittsburgh Police recovered two .38 caliber shell casings from where the defendant was believed to be standing in a grassy area. The defense contended that the victim's son had given him the gun, and the defendant had initially pointed it at the SUV in an attempt to scare them away. When the vehicle returned, the defendant testified that an arm protruded from the vehicle with a gun pointed at him. At that time the defendant shot twice. No other witnesses observed the arm with a gun from the Escalade window.

(Resp't Ex. 6, Tr. Ct. Op. dated 7/30/09, ECF No. 22-1, pp.28-30.)

Petitioner was charged by criminal information filed in the Court of Common Pleas of

Allegheny County, Pennsylvania, Criminal Division with having committed one count each of

Criminal Homicide, 18 Pa. C.S.A. § 2501; Firearms Not to be Carried without a License, 18 Pa.

C.S.A. § 6106; and Recklessly Endangering Another Person ("REAP"), 18 Pa. C.S.A. § 2705.

(Resp't Ex. 2, Criminal Information, ECF No. 22-1, pp.15-18.) Petitioner, through counsel,

sought recusal of all judges of Allegheny County as the homicide victim, Ms. Cheryl Wilds, was

an Allegheny County court reporter who had served in each of the judges' courtrooms. (Resp't Ex. 1, Docket Sheet, ECF No. 22-1, p.4.) The Honorable Jeffrey Manning recused himself from the case, and it was subsequently assigned to the Honorable John K. Reilly ("the trial court").

On October 14, 2008, the trial court issued an order granting special relief directing "[a]ny and all employees of Allegheny County Courthouse . . . to immediately remove any and all posters, photographs or otherwise of [the victim] from Courthouse walls, bulletin boards, and the like." Id., p.5.

At trial, which began on October 20, 2008, Petitioner was represented by Noah Geary, Esq., and Deputy District Attorney Bruce Beemer represented the Commonwealth. On October 23, 2008, at the close of all the evidence, Petitioner was adjudged guilty of first-degree murder and the other two offenses. (Resp't Ex. 3, Verdict, ECF No. 22-1, p.19.) On December 19, 2008, the trial court sentenced Petitioner to a mandatory sentence of life without parole for first-degree murder and a concurrent two to four years of incarceration for the firearms violation. He received no further penalty for the REAP offense. (Resp't Ex. 4, Sentencing Order, ECF No. 22-1, pp.20-21.)

Petitioner filed a timely *pro se* appeal to the Superior Court of Pennsylvania, which was docketed at 608 WDA 2009.[3] (Resp't Ex. 5, Appeal Docket Sheet, ECF No. 22-1, pp.22-25.) The trial court issued its Pa. R.A.P. 1925(a) Opinion on July 30, 2009, and, on August 27, 2009, Judge Manning issued a separate Opinion regarding his ruling on Petitioner's pre-trial recusal motion. (Resp't Ex. 6, Tr. Ct. Op. dated 7/30/09, ECF No. 22-1, pp. 26-33; Resp't Ex. 7, Op. dated 8/27/09, ECF No. 22-1, pp.34-37.) Following briefing (Resp't Ex. 8, Br. for Appellant, ECF No. 22-2; Resp't Ex. 9, Br. for Appellee, ECF No. 22-3, pp.1-30), the Pennsylvania

---

[3] Matthew Debbis, Esq. was subsequently appointed to represent Petitioner on direct appeal.

Superior Court affirmed Petitioner's judgment of sentence on February 24, 2011. (Resp't Ex. 10, Memorandum dated 2/24/11, ECF No. 22-3, pp.31-39.) A Petition for Reargument/Reconsideration *en banc* (Resp't Ex. 11, Petition, ECF No. 22-3, pp.40-54) was denied on May 6, 2011, (Resp't Ex. 12, Order, ECF No. 22-3, p.55).

On June 3, 2011, Petitioner, through Attorney Debbis, filed a timely Petition for Allowance of Appeal ("PAA") to the Supreme Court of Pennsylvania, which was docketed at 286 WAL 2011. (Resp't Ex. 13, Appeal Docket Sheet, ECF No. 22-4, pp.1-3; Resp't Ex. 14, PAA, ECF No. 22-4, pp.4-35.) In response, the Commonwealth filed a "No Answer Letter" on June 6, 2011 (Resp't Ex. 15, No Answer Letter, ECF No. 22-4, p.36), and the court denied the PAA on October 14, 2011, (Resp't Ex. 16, Order, ECF No. 22-4, p.37). Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.

Next, on September 12, 2012, Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). (Resp't Ex. 17a, PCRA Petition, ECF No. 22-5, pp.1-12.) Scott Coffey, Esq., who was appointed to represent Petitioner for post-conviction proceedings, filed an Amended PCRA Petition on March 14, 2013. (Resp't Ex. 17b, Amended PCRA Petition, ECF No. 22-5, pp.13-37.) The Commonwealth filed their Answer on May 1, 2013. (Resp't Ex. 18, Answer, ECF No. 22-6, pp.1-25.) Judge Beth A. Lazzara ("the PCRA court")[4] issued her Notice of Intent to Dismiss the Amended PCRA Petition on September 22, 2014, (Resp't Ex. 19, Order dated 9/19/14, ECF No. 22-6, p.26), and she issued the PCRA court's Order denying the Petition on October 10, 2014, (Resp't Ex. 20, Order dated 10/10/14; ECF No. 22-6, p.27).

---

[4] Petitioner's case was transferred to Judge Lazzara following the death of Judge Reilly. *See* Resp't Ex. 22, Op. dated 1/21/15, ECF No. 22-6, p.33.

Petitioner filed a timely appeal to the Superior Court of Pennsylvania, which was docketed at 1752 WDA 2014. (Resp't Ex. 21, Appeal Docket Sheet, ECF No. 22-6, pp.28-31.) The PCRA court issued its Pa. R.A.P. 1925(a) Opinion on January 21, 2015. (Resp't Ex. 22, Op. dated 1/21/15, ECF No. 22-6, pp.32-41.) Petitioner, through Attorney Coffey, filed his Brief on February 18, 2015, (Resp't Ex. 23, Br. for Appellant, ECF No. 22-7, pp.1-33), and the Commonwealth filed its Brief on March 18, 2015, (Resp't Ex. 24, Br. for Appellee, ECF No. 22-7, pp.34-61). On June 30, 2015, the Superior Court affirmed the PCRA court's order denying Petitioner post-conviction relief. (Resp't Ex. 25, Memorandum dated 06/30/15, ECF No. 22-7, pp.62-73.)

Petitioner filed a PAA to the Pennsylvania Supreme Court, which was docketed at 255 WAL 2016. (Resp't Ex. 26, Appeal Docket Sheet, ECF No. 22-8, pp.1-3; Resp't Ex. 27, PAA, ECF No. 22-8, pp.4-38.) It was denied by the court on November 16, 2015. (Resp't Ex. 28, Order dated 11/16/15, ECF No. 22-8, p.39.) Petitioner did not seek certiorari in the United States Supreme Court.

The original Petition for Writ of Habeas Corpus ("the original Petition") in this case was filed by Petitioner, through counsel Craig M. Cooley, Esq., on March 24, 2016. (ECF No. 1.) On August 3, 2016, Petitioner, through counsel, filed an Amended Petition ("the Petition"), (ECF No. 17), and Respondent's filed their Answer to it on November 10, 2016, (ECF No. 22).

**B.    <u>Statute of Limitations</u>**

AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

<ol type="A">
<li style="margin-left:2em"> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; </li>
</ol>

      (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. <u>Fielder v. Varner</u>, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any other statutory exceptions or equitable tolling should be applied on the facts presented.

The parties do not appear to dispute that the "trigger date" for Petitioner's statute of limitations commenced on the date Petitioner's judgment of sentence became final by the conclusion of direct review. In this case, the Pennsylvania Superior Court affirmed Petitioner's judgment of sentence on February 24, 2011, and reargument was denied on May 6, 2011. Petitioner then filed a PAA with the Pennsylvania Supreme Court that was denied on October 14, 2011. He did not file a petition for writ of certiorari to the United States Supreme Court, so his judgment of sentence became final on January 12, 2012, when his opportunity to file such a petition expired. *See* <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the time limit (90 days) for filing a writ of certiorari in the Supreme Court). Absent any tolling of the statute, Petitioner had one year from that date to file a timely habeas petition.

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings pursuant to section 2244(d)(2). Here, 243 days of Petitioner's statute of limitations expired before Petitioner sought collateral relief through a properly filed PCRA petition on September 12, 2012, which stopped the statute of limitations from running.[5] It was then tolled until the Pennsylvania Supreme Court denied Petitioner's PAA on November 16, 2015. The statute of limitations started to run *the following day* and ran for 128 days until counsel for Petitioner filed the original Petition in this

---

[5] The date on which the PCRA is filed is not counted against the statute of limitations as it is considered "pending" on that day.

Court on March 24, 2016.[6]  In sum, a total of 371 days elapsed, and, therefore the original

Petition was untimely filed by six days.[7]

Having failed to meet AEDPA's one-year statute of limitations, the Petition can only be

saved by application of the doctrine of equitable tolling.  The United States Supreme Court has

held that AEDPA's statute-of-limitations period "is subject to equitable tolling in appropriate

cases."  Holland v. Florida, 560 U.S. 631, 645 (2010).  A petitioner is entitled to equitable tolling

only if he shows that: (1) he has been pursuing his rights diligently,[8] and (2) some extraordinary

circumstance stood in his way and prevented timely filing.  Id. at 649.  *See also* Ross, 712 F.3d at

798-804; United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013); Munchinski v. Wilson, 694

F.3d 308, 329-32 (3d Cir. 2012).  "This conjunctive standard requires showing *both* elements

before we will permit tolling."  Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis

in original).

---

[6] The date on which the PAA was denied by the Pennsylvania Supreme Court is not counted
against the statute of limitations, nor is the date that the Petition was filed in this Court because
they were "pending" on those days.

[7] To be timely, the original Petition had to be filed by March 17, 2016.

[8] The United States Court of Appeals for the Third Circuit has explained:

> The diligence required for equitable tolling purposes is reasonable
> diligence, not maximum, extreme, or exceptional diligence.  Holland, 130 S.Ct. at
> 2565….  A determination of whether a petitioner has exercised reasonable
> diligence is made under a subjective test: it must be considered in light of the
> particular circumstances of the case.  *See* Schlueter v. Varner, 384 F.3d 69, 74 (3d
> Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but
> it does require diligence *in the circumstances*.") (emphasis added) (internal
> quotation marks and citation omitted); *see also* Doe v. Busby, 661 F.3d 1001,
> 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing
> his petition, courts consider the petitioner's overall level of care and caution *in
> light of his or her particular circumstances*." (emphasis added)).

Ross v. Varano, 712 F.3d 784, 799 (3d Cir. 2013).

Counsel for Petitioner acknowledges that the original Petition was untimely filed but argues that Petitioner should get the benefit of equitable tolling. In support of this claim, counsel states that on March 8, 2016, he mailed to this Court, via standard USPS mail, a letter addressed to the Clerk of Court, the original Petition and a motion requesting an extension of time to file an amended petition. (ECF No. 17, ¶ 25.) The letter specified that the original Petition had to be filed on or before March 16, 2016. (ECF No. 17, ¶ 26.) Two days later, on March 10, 2016, counsel also emailed a copy of the original Petition and motion for extension of time to Assistant District Attorney Ronald Wabby informing him that he had mailed the pleadings to the Clerk's Office on March 8th. (ECF No. 17, ¶ 27.) On March 24, 2016, counsel called the Clerk's Office to inquire about the case number assigned to the case but was informed that the pleadings were never received. (ECF No. 17, ¶ 28.) After speaking with the Clerk's Office, counsel immediately called the ECF administrator and requested an ECF login username and password, which he received that same day. (ECF No. 17, ¶ 29.) As a result, counsel electronically filed the original Petition on March 24, 2016. Id.

Counsel states that he has been a practicing attorney since 2005 and this is the first time his mailed pleadings have mysteriously disappeared on the way to the Clerk's Office. (ECF No. 17, ¶ 28, FN 5.) In support of his request for equitable tolling, counsel argues that not only did Petitioner diligently pursue his rights in state court, but he has also done so in federal court by retaining counsel with 121 days remaining to file his habeas petition. (ECF No. 17, ¶¶ 31-32.) Additionally, counsel states that he did not wait until the last minute to mail the habeas petition, but did so a week before the expiration of the statute of limitations. Id. He claims that the untimely filing was not the result of attorney error, miscalculation, inadequate research or

governmental interference, but rather the result of the extraordinariness of the pleadings getting lost in the mail or disappearing once they reached the Court.  (ECF No. 17, ¶¶ 33-34.)

In his Amended Petition, counsel cites to <u>Washington v. Ollison</u>, No. C 06-4490, 2007 WL 1378013, at *3 (N.D. Cal. May 9, 2007), where the district court granted the petitioner equitable tolling for a petition that was never received because it was mailed to an incorrect address in Eureka, California.  However, in that case, the petitioner produced evidence of the address he acquired for the courthouse from a directory that listed an incorrect address – a fitness/health club operated by a former magistrate judge who used to receive legal mail at that address.  The district court specifically noted that while the "they lost my mail" argument usually will not succeed, it qualified as an extraordinary circumstance beyond the petitioner's control in that case because mailing the petition to the Eureka address found in the directory "was a reasonable choice for a non-lawyer" and because the petitioner "presented (a) a prison mail log showing that some mail was sent by him to th[e] court's Eureka branch in the relevant time period, (b) a third-party directory listing the Eureka address as a branch for th[e] district, (c) his inmate trust account statement showing postage for a heavy package being deducted from his account at the relevant time, and (d) contemporaneous inmate appeals complaining about the lost mail." <u>Id</u>., at FN 3.

Counsel also cites to <u>McKinley v. McCollum</u>, No. CIV-16-126-R, 2016 WL 2587287, at *2 (W.D. Okla. May 4, 2016), wherein the district court declined to adopt the magistrate judge's report and recommendation wherein the judge recommended that the court dismiss the petitioner's habeas petition as untimely.  The district court in <u>McKinley</u> remanded the matter to the magistrate judge for additional consideration regarding the petitioner's contention that he was entitled to equitable tolling since he provided evidence to support his claim that he placed his

application for post-conviction relief in the prison mail but it was never received by the clerk of court. On remand, the magistrate judge specifically noted the evidentiary support that the petitioner provided to support his claim that he placed his application in the prison mail and found that he had met the standard for equitable tolling. 2016 WL 11469348 (W.D. Okla. May 25, 2016).

"Courts are typically only willing to equitably toll the filing deadline when there is sufficient evidence that in fact the petitioner did timely mail his filing, thus making the claim of 'lost mail' substantially more believable." Johnson v. U.S., No. 10-CV-341, 2010 WL 2490694, at *3 (E.D. Wis. June 17, 2010) (citing Washington, *supra*, and Chapman v. Ricks, No. 9:03-CV-0171, 2008 WL 820189, at *7-8 (N.D.N.Y. Mar. 26, 2008)). In the cases cited by counsel, the petitioners presented such evidence. In this case, however, such evidence is lacking. While counsel for Petitioner has submitted an email that he sent to his secretary on March 8, 2016, attaching the pleadings and requesting that she mail them to the Federal Courthouse in Pittsburgh, he has not submitted evidence that she in fact mailed them on that day, or at all. (ECF No. 23-1, p.1.) This is not to say that she did not mail them. Indeed, the error very well could lie with the post office. Nevertheless, it was another error that occurred after the pleadings were mailed, which is an error that does in fact lie with counsel, that prevents this Court from finding a basis to grant equitable tolling. Specifically, it was not until March 24, 2016, almost two weeks after the statute of limitations had expired, and sixteen days after his secretary allegedly mailed the pleadings, that counsel called the Clerk's Office to confirm that they had been filed. The Third Circuit Court of Appeals has said that "[g]enerally, in a non-capital case . . ., "attorney error is not a sufficient bases for equitable tolling of the AEDPA's one-year period of limitation." Schlueter v. Varner, 384 F.3d 69, 76 (3d Cir. 2004) (citing Johnson v. Hendricks,

314 F.3d 159, 163 (3d Cir. 2002)); *see also* <u>Fahy v. Horn</u>, 240 F.3d 239, 244 (3d Cir. 2001) (recognizing that in non-capital cases, attorney error has not been found to rise to the extraordinary circumstances required for equitable tolling).  Under the circumstances presented here, the Court is constrained to find that the Petition is time-barred because, without evidence that the original Petition was in fact mailed on March 8, 2016, the failure of counsel to inquire as to the filing of the original Petition until sixteen days after the statute of limitations had expired does not warrant equitable tolling.  Nevertheless, out of an abundance of caution, the Court will proceed to review the claims in the Petition in the alternative.

**C.    Applicable Standards**

**1.    28 U.S.C. § 2254(d)**

Pursuant to the AEDPA, a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Supreme Court of the United States, in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id</u>. at 1498.  The Third Circuit Court of Appeals, consistent with the <u>Williams v. Taylor</u> interpretation, set forth in <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877 (3d Cir. 1999), *cert*. *denied* 528 U.S. 824 (1999), a two-tier approach to reviewing § 2254(d)(1) issues:

First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien [v. Dubois], 145 F.3d [16], 24-25 [1st Cir. 1998)]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent; that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

Id. at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme Court] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 365. Under the "unreasonable application" clause,

a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a de novo evaluation of the constitutional claim on the merits. See Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires."). Indeed, the Third Circuit recently explained that,

[w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495. See also Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301

(2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred. *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings. *See* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Within this overarching standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

### 2. **Exhaustion and Procedural Default**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. Specifically, a federal habeas court may not grant a state prisoner's petition for writ of habeas

corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). This is called the "exhaustion" requirement and it is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). *See also* O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999). In order to exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal. *See*, *e.g.*, Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

"If a claim has not been fairly presented to the state courts but state law clearly forecloses review, *see* Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998), 28 U.S.C. § 2254(b)(1)(B)(i), exhaustion is excused, *see*, *e.g.*, Lambert [v. Blackwell], 134 F.3d [506] at 513, 517-19 [(3d Cir. 1997)]; Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996), but the doctrine of procedural default may come into play." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). Under the procedural default doctrine, a federal court may be precluded from reviewing claims in certain situations. *See* Gray v. Netherland, 518 U.S. 152, 162 (1996) (The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment); Coleman v. Thompson, 501 U.S. 730, 732 (1991) (If a petitioner has failed to properly exhaust a claim – for example, he failed to comply with a state procedural rule, and as a result the state court declined to adjudicate the claim on the

merits, the claim is defaulted in federal habeas corpus under the procedural default doctrine.).

As the United States Court of Appeals for the Third Circuit explained in Rolan v. Coleman, 680

F.3d 317 (3d Cir. 2012):

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see* Wenger v. Frank, 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see* McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

Rolan, 680 F.3d at 317.

A petitioner whose constitutional claims have not been addressed on the merits due to

procedural default can overcome the default, thereby allowing federal court review, if he or she

can demonstrate either:  1) "cause" for the default and "actual prejudice" as a result of the

alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental

miscarriage of justice."  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v.

Thompson, 501 U.S. 722, 750 (1991).  To satisfy the cause standard, a petitioner must

demonstrate that some objective factor external to the defense impeded his or her efforts to raise

the claim in state court.  McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477

U.S. 478, 488 (1986).  To show prejudice, a petitioner must demonstrate that the error worked to

his actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions, not merely that the error created a "possibility of prejudice."  Carrier, 477 U.S. at

494; United States v. Frady, 456 U.S. 152, 170 (1982).  Where a petitioner cannot make a

showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or

her unexhausted claims under circumstances in which the failure to adjudicate such claims would

result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  The "prototypical

example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.  In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

Finally, in Martinez v. Ryan, 132 S. Ct. 1309 (2012), the United States Supreme Court recognized a narrow equitable exception to the doctrine of procedural default:  "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  This exception is available to a petitioner who can show that:  (1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," id. at 1318-19 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)); and that (2) his state-post conviction counsel was "ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984)."  Id.

To demonstrate that a claim has "some merit," a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) . . . the issues presented were adequate to deserve further encouragement to proceed further."  Miller-El, 537 U.S. at 336 (internal citation, quotation marks, and alteration omitted).  This is a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the claims."  Id.

17

at 327, 336. In addition to demonstrating that the claim has "some merit," Petitioner must also show that state post-conviction counsel was ineffective under the standards of <u>Strickland v. Washington</u> to excuse the procedural default of the underlying claim. <u>Martinez</u>, 132 S. Ct. at 1318. In order to prove ineffective assistance of counsel under <u>Strickland v. Washington</u>, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. A petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. These are referred to as the "performance" and "prejudice" prongs, respectively. *See* <u>Bey v. Superintendent Greene SCI</u>, 856 F.3d 2300. 238 (3d Cir. 2017).

The Third Circuit Court of Appeals recently adopted the following rule with respect to <u>Martinez</u>. If a petitioner can show "that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, [then] he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under <u>Martinez</u>." <u>Workman v. Superintendent Albion SCI</u>, -- F.3d --, 2018 WL 5987138, at *7 (3d Cir. Nov. 15, 2018). However, as this Court has stated, "<u>Martinez v. Ryan</u> does not allow habeas petitioners who fail to make a claim until the federal habeas stage to obtain an evidentiary hearing and a *de novo* evaluation of the claim on the mere assertion that PCRA counsel was ineffective." <u>Boggs v. Rozum</u>, No. 3:14-cv-34, 2017 WL 1184062, at *9 (W.D. Pa. Jan. 5, 2017).

**D.      Discussion**

Petitioner asserts two claims for relief: (1) ineffective assistance of counsel for failure to request a jury instruction on voluntary manslaughter, and (2) cumulative prejudice. They are addressed in the alternative to the Court's finding that the Petition is time-barred.

## 1. **Ineffective assistance of counsel: Failure to request voluntary manslaughter instruction**

Petitioner first claims that trial counsel's request to the trial court not to give a voluntary manslaughter instruction was objectively unreasonable, especially in light of his defense of self-defense, and trial counsel's deficient performance resulted in prejudice because it prevented the jury from considering imperfect self-defense.[9]  (ECF No. 17, p.12.)  The parties do not dispute that this claim is exhausted because it was raised before the state courts on collateral review in its current form and addressed on the merits.  (ECF No. 17, p.12; ECF No. 22, p.29.)

The claim was first presented to the PCRA court and addressed in its Pa. R.A.P. 1925(a) Opinion dated January 21, 2015.  (Resp't Ex. 22, Opinion 1/21/15, ECF No. 22-6, pp.32-41.)  Ultimately, the court concluded that "[t]rial counsel had a reasonable basis for his decision to forego a jury instruction on Voluntary Manslaughter, which preclude[d] Petitioner from overcoming the presumption that he received effective assistance of counsel."  Id. at p.41.  The relevant portion of the PCRA court's Opinion explaining how it came to its conclusion is set forth as follows:

> Petitioner's request for relief under the PCRA was properly denied because Petitioner is unable to overcome the presumption that he received effective assistance of counsel.  Indeed, even if Petitioner could satisfy the first

---

[9] Without the voluntary manslaughter instruction, the jury was left to choose among first-degree murder, third-degree murder, involuntary manslaughter, or an acquittal.  Under a voluntary manslaughter conviction, Petitioner, who was only 18 years old at the time of the offense, could not have been sentenced to life imprisonment.  (Resp't Ex. 25, Memorandum, ECF No. 22-7, p.65.)

On appeal from the denial of PCRA relief, the Superior Court noted that "[d]uring the colloquy on jury instructions, the trial court and prosecutor were somewhat incredulous at Appellant's counsel's decision to ask for a charge on involuntary manslaughter, which involves reckless or grossly negligent conduct (18 Pa.C.S.A. § 2504(a)) and not on voluntary manslaughter.  The prosecutor and trial judge believed the latter and not the former to be applicable, given Appellant's intentional conduct and his justification defense."  Id. at pp.65-66.

prong of the test and show that the issue raised is of arguable merit, he is unable to prove that his counsel's decision to preclude the jury from considering imperfect self-defense lacked any reasonable basis designed to effectuate his interests.

After reviewing the record as a whole, it is quite apparent that counsel's strategy at trial was to secure an outright acquittal by vigorously pursuing a complete justification defense. From his opening and closing arguments, to his examination of witnesses, trial counsel was focused on convincing the jury that his client's fear was legitimate, and that his fear, as well as his actions, were objectively reasonable under the circumstances. Petitioner testified on his own behalf, and he claimed that, on the day before the incident, he had been the victim of an armed robbery, and he believed that the robbers fled the scene in a "burgundy SUV." Petitioner called witnesses to corroborate his claim that he was held up at gunpoint and that he was "scared" and "shaken up" by the incident. The day after he was robbed, he returned to the area to visit his girlfriend, and he claimed that he was being followed throughout the day by the same burgundy SUV that he had seen the day before. He explained to the jury how he attempted to retreat from the area because he feared that the men in the SUV were armed and after him, . . . , and he tried to convince the jury that he was left with no choice but to defend himself when the burgundy SUV drove slowly past him, and he saw an "arm come out the window" holding a gun that was pointed "right at" him.

Thus, the arguments made by his counsel, and the testimony solicited, were all aimed at persuading the jury that Petitioner "reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm," that he [ ] "was free from fault in provoking the difficulty which culminated in the slaying," and that he "did not violate any duty to retreat." <u>Commonwealth v. Mouzon</u>, 53 A.3d 738, 740 (Pa. 2012). The defense strategy to proceed on the theory of complete justification was even recognized by the assistant district attorney during the charge conference.

The decision of "whether to object to the trial court's charge, to request clarification of the charge, or to request additional points for charge is one of the tactical decisions 'within the exclusive province of counsel.'" <u>Commonwealth v. Sullivan</u>, 299 A.2d 608, 610 (Pa. 1973) (quoting <u>Commonwealth v. McGrogan</u>, 297 A.2d 456, 457 (Pa. 1972)). Given that counsel's objective at trial was to establish a pure self-defense claim, he specifically requested that the Voluntary Manslaughter instruction not be given, as it may have frustrated the attempts he made throughout the trial at establishing that his client's fear was objectively reasonable and that he was, therefore, justified in his use of deadly force. Counsel may also have believed that an instruction on voluntary manslaughter could have led to a compromised verdict and subtly communicated to the jury a defense

interest in the charge. *See* <u>Sullivan</u>, *supra*, at 610 (noting that "[i]t was the defense preference not to indicate to the court or the jury any defense interest in a manslaughter charge or verdict" because "as a matter of trial strategy appellant elected to seek an acquittal on the ground of self-defense and decided to forego consideration by the jury of a verdict of guilty of voluntary manslaughter"). Accordingly, because counsel's decision to not pursue the voluntary manslaughter charge was part of a reasonable trial strategy to seek an outright acquittal on the homicide charge, he cannot be faulted because his strategy ultimately proved unsuccessful. *See* <u>Sullivan</u>, *supra*, at 611 ("[W]hen for some reason counsel's deliberate trial strategy 'backfires', the failure of the strategy cannot form the basis for relief upon review.").

It must be noted that there is nothing in the record to suggest that the jurors rejected Petitioner's self-defense claim specifically because they believed that his fear was objectively unreasonable under the circumstances. Rather, the evidence at trial was such that the jurors may not have found a self-defense claim to be viable based on factual contradictions concerning key elements of that defense. For example, the Commonwealth presented evidence that Petitioner initially attempted to fire his weapon at the burgundy SUV shortly after he was given the weapon, but prior to the time that the actual incident occurred. [FN1] The evidence also demonstrated that Petitioner could have safely retreated from the area prior to the shooting. Petitioner did not reside in the neighborhood where the shooting occurred, and, although Petitioner testified he had attempted to secure a ride out of the area, the jury could have found that Petitioner had every opportunity to remove himself from the threatening situation and that he failed to make enough of an effort to leave the neighborhood. According to Petitioner's own version of events, he called Robert Wilds for a ride; however, instead of picking him up, Robert met with him, provided him with a weapon, and then left in his vehicle. When questioned as to why he did not chase after Robert and demand to leave with him, Petitioner simply responded, "[i]t was too late."

> FN1   A witness saw Petitioner standing "in the middle of the street" after the "burgundy Escalade" drove past him for the second time that day, and he observed Petitioner "pull[] his gun out and tr[y] to shoot" at the vehicle, but the gun failed to discharge, and Petitioner was heard stating that the firearm had "jammed."

Thus, the jury could have very well found Petitioner's claim of self-defense to be without merit because he provoked the attack, did not make sufficient attempts to retreat from the area, or both. In either scenario, the imperfect self-defense instruction would not have benefited Petitioner, as it still requires a showing that he was free from fault and that he did not violate a duty to retreat. *See* <u>Commonwealth v. Rivera</u>, 983 A.2d 1211, 1224 (Pa. 2009) ("[A] claim of imperfect self-defense must satisfy all the requisites of justifiable self-defense (including that the defendant was not the aggressor and did not violate a

duty to retreat safely), with the exception that imperfect self-defense involves an *unreasonable*, rather than a reasonable, belief that deadly force was required to save the actor's life.") (emphasis in original); *See also* 18 Pa.C.S. § 505(b).

Ultimately, the question boils down to whether counsel's decision to pursue a pure self-defense claim had any reasonable basis designed to effectuate his client's interests. Counsel's trial strategy could have resulted in an outright acquittal on the homicide charge, if it had proven successful. Our appellate courts have previously held that "[t]he goal of seeking complete acquittal . . . does not constitute ineffective assistance of counsel." Farmer, *supra*, at 179; *see also* Sullivan, *supra*, at 611, and McGrogan, *supra* at 459 (finding that counsel's trial strategy of limiting jury's options in attempt to secure outright acquittal was reasonable). Moreover, it would be difficult to conclude that counsel's strategy of securing an outright acquittal was "so unreasonable that no competent lawyer would have chosen it." Farmer, *supra*, at 179. Accordingly, Petitioner's claim of ineffective assistance lacks merit, and his request for relief should, therefore, be denied.

(Resp't Ex. 22, Opinion 1/21/15, ECF No. 22-6, pp.36-41) (internal citations to the record omitted).

Petitioner next raised the issue on appeal and the Superior Court found no legal error by the PCRA court in dismissing the claim. However, rather than affirming on the same basis as the PCRA court, *i.e.*, that trial counsel's reason for forgoing a voluntary manslaughter/imperfect self-defense instruction was based on a reasonable strategy aimed at seeking an acquittal, the Superior Court instead found Petitioner had failed to establish prejudice as a result of counsel's failure to request the instruction because it did not believe a reasonable probability existed that such an instruction would have led to a different result. The relevant portion of the Superior Court's opinion is as follows:

The instant record reflects that Appellant had at least four encounters with the burgundy SUV on the day of the murder. In the first, two of the vehicle's occupants got out and taunted Appellant as he was sitting outside of a barbershop. Appellant, who apparently was unarmed at the time, did not respond to the taunting and walked inside the barbershop. Later that day, the SUV drove past Appellant again. Appellant, now armed, attempted to shoot at the SUV despite no apparent threat from the vehicle, but his gun failed to discharge. More

specifically, Appellant walked into the middle of the street and attempted to shoot at the back of the vehicle after it passed him **and was driving away from him**. The vehicle was approximately 20 feet past Appellant when he attempted to open fire. Appellant was donning a black ski mask during this attempted shooting. The witness heard Appellant complain that his gun had jammed. After this incident, Appellant entered one of the houses on the street.

Later, Appellant was once again on the sidewalk, and the SUV approached Appellant a third time. The eyewitness fled and gave no specifics, other than one person emerged from the SUV. In the final encounter, Appellant opened fire, missing the SUV but shooting the victim in the neck, killing her. No other witness corroborated Appellant's account of an arm reaching out the window of the SUV during this encounter.

Appellant testified that he feared the occupants of the burgundy SUV because he and his girlfriend were robbed at gunpoint in the same neighborhood the day before. Appellant did not report the robbery to the police or to the proprietors of nearby businesses. Immediately after the robbery, Appellant saw the dark red SUV drive past again. Appellant returned to the neighborhood the next day to visit his girlfriend, which he did every day. Appellant's girlfriend's house was not in the immediate vicinity of the scene of the alleged robbery and Appellant's encounters with the SUV the next day. Eventually, Appellant's girlfriend left with her friend and Appellant remained in the neighborhood alone. Appellant testified he retreated into a barbershop after his first encounter with the SUV on the day of the shooting. One of the vehicle's occupants followed him into the barbershop, but the barber asked the occupant to leave. Appellant stated he remained in the barbershop for a period of time but was unable to leave the neighborhood because the barbershop did not have a back door. Upon leaving the barbershop, Appellant called several friends in attempt to obtain transportation out of the neighborhood. One of the friends met Appellant outside the barbershop and handed him a gun wrapped in a white T-shirt and then left.

Appellant testified that when he saw the SUV the second time he pointed the gun to scare the vehicle's occupants but did not attempt to shoot. Appellant ran down the street to the home of "Gina," a woman he knew. The occupant who answered the door did not allow him to enter. Gina's home was only several houses away from the home of Appellant's friend where Appellant spent time every day for a period of months. Appellant hid behind some porch furniture, in front of Gina's home but the occupant of the home asked him to leave.

Just before the shooting, Appellant testified he was behind some dead bushes. Appellant saw the SUV approaching and he saw an arm protruding out of the window pointing a gun at him. Appellant then pointed his gun at the SUV and shot twice. Appellant testified the occupant of the SUV fired at him at the same

time. Appellant stayed at a friend's girlfriend's house for a week before his arrest.

On direct appeal, Appellant argued the Commonwealth failed to produce sufficient evidence to disprove self-defense beyond a reasonable doubt. The trial court rejected that argument in its Pa.R.A.P. 1925(a) opinion, noting the Appellant's first, unsuccessful attempt to open fire on the SUV and Appellant's failure to retreat. Trial Court Opinion, 7/30/09, at 5-6. The trial court noted Appellant had an opportunity to retreat into a nearby fire station. Id. at 6. In affirming the trial court on that issue, this Court adopted the trial court's reasoning. Commonwealth v. Massey, 608 WDA 2009 (Pa. Super. 2011), unpublished memorandum, at 7.

Under these circumstances, Appellant's assertion of counsel's ineffectiveness fails because Appellant cannot establish prejudice. "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Commonwealth v. Spotz, 84 A.3d 294, 312 (Pa. 2014). A jury charge on § 2503(b) – where the record reflects that Appellant was the aggressor and had an opportunity to retreat – could not have changed the outcome of this case. *See* Commonwealth v. Isaacman, 409 A.2d 880, 881 (Pa. Super. 1979) (holding the defendant had a duty to retreat when the decedent left the scene, even if the defendant believed the decedent would later return and attempt to harm the defendant). The jury found the Commonwealth disproved Appellant's justification defense beyond a reasonable doubt. The factors this Court relied on in affirming the conviction on direct appeal – Appellant's aggression and his failure to retreat – are equally fatal to an imperfect self-defense theory under § 2503(b). In summary, the record reflects that Appellant voluntarily returned to the location where he was allegedly the victim of a robbery one day earlier. He remained in that location after several encounters with a vehicle he believed to be occupied by the perpetrators. He obtained a weapon from a friend and attempted to fire it unsuccessfully – while donning a ski mask – on one occasion prior to the fatal encounter. Given these facts, we do not believe a reasonable probability exists that a voluntary manslaughter instruction would have led to a different result, *i.e.*, conviction for a lesser offense than first-degree murder. Appellant has failed to establish prejudice, and that failure is fatal to his claim. Ligons, 971 A.2d at 1137 (noting that a claim of ineffective assistance of counsel will not succeed unless the petitioner pleads and proves all three prongs of the analysis). We discern no legal error in dismissing Appellant's PCRA petition. [FN]

> [FN]   We are cognizant that the PCRA court dismissed the
> petition because it believed counsel made a strategically reasonable
> choice in seeking acquittal based on the justification defense rather
> than a potential compromise verdict resulting in a conviction for

> voluntary manslaughter.  In support of its holding, the PCRA court
> cites <u>Commonwealth v. Sullivan</u>, 299 A.2d 608 (Pa. 1973),
> wherein the Supreme Court held that the decision to forego a given
> jury charge is "one of tactical decisions exclusively within the
> province of counsel."  <u>Id</u>. at 610.  Thus, counsel was not
> ineffective for foregoing a voluntary manslaughter jury charge in
> hope of obtaining an acquittal based on self-defense.  <u>Id</u>.  We need
> not express an opinion on counsel's strategic basis, as Appellant's
> failure to establish prejudice is fatal to his claim.  We are free to
> affirm the PCRA court on any valid basis.  <u>Commonwealth v.
> Janda</u>, 14 A.3d 147, 161 n.8 (Pa. Super. 2011).

(Resp't Ex. 25, Memorandum 6/30/15, ECF No. 22-7, pp.68-72) (emphasis in original) (internal

citations to the record and footnote omitted).

Ineffective assistance of counsel claims like this one are governed by the familiar two-

prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under <u>Strickland</u>, the

defendant must demonstrate that: (1) counsel's representation fell below an objective standard of

reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result

would have been different.  466 U.S. at 687.  For the deficient performance prong, "[t]he proper

measure of attorney performance remains simply reasonableness under prevailing processional

norms."  <u>Id</u>. at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  <u>Id</u>. at 694.

As an initial matter, in reviewing the state courts decisions in this case, it is important to

note that both the PCRA court and the Superior Court identified the correct legal standard for

evaluating ineffective assistance of counsel claims and proceeded to apply it when they reviewed

Petitioner's claim on the merits.  However, it is also important to note that both state courts

denied relief to Petitioner under different prongs of the ineffective assistance of counsel test.  In

evaluating Petitioner's claim, the PCRA court concluded that Petitioner could not overcome the presumption that he received effective assistance of counsel because trial counsel had a reasonable basis for his decision to forgo the voluntary manslaughter jury instruction. The Superior Court, however, concluded that Petitioner had not established prejudice as a result of trial counsel's decision, but it did not expressly overrule or disagree with the analysis by the PCRA court. Given these two independent grounds on which the state courts denied relief, each state court decision is owed deference under AEDPA. *See* Bond v. Beard, 539 F.3d 256, 289 (3d Cir. 2008) (reviewing the Pennsylvania Supreme Court's decision for the first prong of the Strickland analysis, but the PCRA court's ruling for the prejudice prong).

For AEDPA purposes the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). While both the PCRA court and the Superior Court applied the Pennsylvania test for ineffective assistance of counsel, which is divided into three prongs instead of two,[10] the Third Circuit Court of Appeals has made it clear that this test does not contradict Strickland. *See* Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent."). Thus, the state courts' rulings do not

---

[10] In Pennsylvania, a petitioner must satisfy a three-prong test in order to overcome the presumption that counsel was effective. The petitioner must demonstrate the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." Commonwealth v. Ligons, 971 A.2d 1125, 1137 (Pa. 2009) (citing Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001)).

contradict the Supreme Court's law governing ineffective assistance of counsel claims.[11]

Furthermore, Petitioner does not identify, nor is this Court aware of, a case with a set of facts that are materially indistinguishable and in which the Supreme Court arrived at a different result. Accordingly, the state courts' decisions are not "contrary to" clearly-established Federal law.[12]

Petitioner also argues that the state courts' rulings involved an unreasonable application of clearly-established Federal law in that the PCRA court's legal conclusion that trial counsel made a reasonable strategic decision to avoid a compromised verdict was objectively unreasonable and the Superior Court's overall prejudice analysis was objectively unreasonable.[13] In conducting this analysis, this Court is cognizant that

> [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v.

---

[11] The United States Supreme Court has stated that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies Strickland as the controlling legal authority and, applying that framework, rejects the petitioner's claim. Quite clearly, the state court-decision would be in accord with our decision in Strickland as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the Strickland framework itself." Williams, 529 U.S. at 406.

[12] Page 31 of the Petition contains the following heading, "The State Courts' Rulings Were Contrary To and an Unreasonable Application of Clearly-Established Federal Law." However, all arguments made under this section relate only to the state courts' rulings being an unreasonable application of clearly-established Federal law.

[13] Petitioner argues that the state courts' rulings are objectively unreasonable under Harrington v. Richter, 562 U.S. 86 (2011), and Cullen v. Pinholster, 563 U.S. 170 (2011), but neither of those cases contain the governing legal rule that applies to Petitioner's claim. Additionally, Petitioner makes several arguments in his Petition that do not reflect the correct standard of review under the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1). Under the correct standard, Petitioner must show that the state courts unreasonably applied the correct governing legal rule to the facts of his case. See Williams, 529 U.S. at 407. Even viewing his arguments under the correct standard, however, he has not made this showing.

<u>Murphy</u>, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles [v. Mirzayance]</u>, 556 U.S. [111,] at 123 [(2009)]. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  566 U.S., at 123.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011).

It is also important to point out that "[i]n § 2254(d)(1), Congress specifically used the word 'unreasonable,' and not a term like 'erroneous' or 'incorrect.'  Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams</u>, 529 U.S. at 411.

In order to better understand Petitioner's argument, a brief summary of the law in Pennsylvania with respect to voluntary manslaughter and self-defense is helpful.

The Pennsylvania Crimes Code defines voluntary manslaughter as follows:

(a)  General rule. - - A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1)  the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

(b)  Unreasonable belief killing justifiable. - - A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503.  Unreasonable belief voluntary manslaughter, under § 2503(b), is commonly known as "imperfect self-defense."  <u>Commonwealth v. Rivera</u>, 983 A.2d 1211, 1223 (Pa. 2009).

Section 505 of the Pennsylvania Crimes Code governs justifiable use of force in self-defense.  Section 505(b) defines relevant limits on the use of deadly force in self-defense.  It provides, in pertinent part, as follows:

> (2)  The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> > (i)  the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii)  the actor knows that he can avoid the necessity of using such force with a complete safety by retreating or surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take[.]

18 Pa.C.S.A. § 505(b).[14]  These factors apply where the defendant asserts imperfect self-defense under § 2503(b).  "[The imperfect self-defense claim] is imperfect in only one respect – an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.  All other principles of justification under 18 Pa.C.S.[A.] § 505 must have been met before [the defendant] would have been entitled to jury instructions on unreasonable belief voluntary manslaughter."  <u>Commonwealth v. Tilley</u>, 595 A.2d 575, 582 (Pa. 1991).  Thus, where the defendant is the aggressor or has an opportunity to retreat with complete safety, § 2503(b) is inapplicable.

---

[14] This is the version of the statute in effect at the time of Petitioner's offense.

With regard to trial counsel's performance, Petitioner argues that the PCRA court's finding that trial counsel had an "all-or-nothing" strategy was "pure speculation" because counsel never gave a strategic or tactical reason for not wanting the voluntary manslaughter/imperfect self-defense instruction, and, even if trial counsel had one, it was not reasonable given the case law on voluntary and involuntary manslaughter, Petitioner's trial testimony, trial counsel's arguments to the trial court during the jury charge, trial counsel's closing arguments, and the trial court's jury instructions.

With regard to the prejudice prong, Petitioner argues that the Superior Court unreasonably concluded that the jury would have rejected a voluntary manslaughter/imperfect self-defense theory because it would have rejected Petitioner's self-defense claim, be it perfect or imperfect, since there was evidence presented that Petitioner was the initial aggressor and that he did not retreat when he could have done so. Instead, Petitioner claims that had the jury had the opportunity to consider an imperfect self-defense claim then there is a reasonable probability that they would have convicted him of voluntary manslaughter rather than first-degree murder. For example, he states that the evidence suggesting that he was the initial aggressor was "minimal at best and nowhere close to being overwhelming," and so the Superior Court's finding that the evidence was such that there was no reasonable possibility that the jury could have concluded that he was not the initial aggressor was objectively unreasonable. He also states that under state law, he "was not required to retreat, even if an avenue of retreat may have objectively existed,"[15] and so the Superior Court's finding that there was no reasonable possibility that the jury could

---

[15] He claims this is because "he subjectively believed he could not retreat and if he attempted to retreat this would only increase the likelihood the SUV would see him again, thus placing him in even greater danger."

have concluded that he satisfied the duty to retreat requirements was also objectively unreasonable.

After reviewing the state court record, the Petition and Answer thereto, this Court finds that neither the PCRA court nor the Superior Court unreasonably applied the legal rule governing ineffective assistance of counsel claims to the facts of Petitioner's case. Both decisions are consistent with Strickland's holding that, to succeed on his claim, Petitioner had to show that counsel's performance was deficient and that there is a reasonable probability that the result of the proceeding would have been different had counsel requested the voluntary manslaughter jury instruction. The Supreme Court has made clear that strategic choices made by counsel are virtually unchallengeable, Strickland, 466 U.S. at 690, and in this case, it is not reasonably probable that the jury would have convicted Petitioner of voluntary manslaughter given that they obviously found the Commonwealth had disproved Petitioner's self-defense claim beyond a reasonable doubt when they convicted him for first-degree murder.[16] Accordingly, Petitioner is not entitled to habeas relief under § 2254(d)(1).

Finally, the Court points out that although Petitioner does not specifically argue in his Petition that he is entitled to habeas relief under § 2254(d)(2) because the state courts' decisions

---

[16] The Court notes that the Commonwealth only had to disprove beyond a reasonable doubt one element of self-defense in order to sufficiently disprove the claim. *See* Commonwealth v. Ventura, 975 A.2d 1128, 1143 (Pa. Super. 2009). Therefore, it is possible the Commonwealth could defeat a self-defense claim by sufficiently proving that a defendant did not reasonably believe that he was in danger of death or serious bodily injury but not that the defendant was the aggressor or had a duty to retreat. In such a factual scenario, it is possible that a defendant could succeed on an imperfect self-defense claim and be found guilty of voluntary manslaughter. However, the state courts found that Petitioner's case was not one of those situations because the evidence was such that the jury could have reasonably concluded that Petitioner was the aggressor and that he could have easily retreated. To the extent Petitioner challenges those factual findings, he has not satisfied his burden under §§ 2254(d)(2) or (e)(1). *See*, *infra*.

were based on an unreasonable determination of the facts in light of the evidence presented at trial, the majority of his arguments are actually premised on this theory. *See*, *e.g.*, Grant v. Stickman, 122 F. App'x 590, 594 (3d Cir. 2005) (stating that the issue before the court is whether the state court was unreasonable in its determination that [trial counsel]'s failure to call witnesses was based on a trial strategy). The Supreme Court has instructed that federal habeas courts

> . . . may not characterize . . . state-court factual determinations as unreasonable merely because [it] would have reached a different conclusion in the first instance. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination.

Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (internal quotations and citations omitted). Furthermore, in deciding whether a state court's determination was reasonable or unreasonable, federal habeas courts must presume that the state courts subsidiary determinations are correct unless the petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner makes numerous attacks on the state courts' factual findings,[17] but, given the evidence presented at trial, this Court cannot say that the PCRA court was unreasonable in its

---

[17] For example, he argues that the PCRA court unreasonably concluded that trial counsel's actions were the result of a sound trial strategy despite trial counsel failing to specify that strategy on the record when he was questioned by the judge and the prosecutor about why he wanted to forgo the voluntary manslaughter instruction. Petitioner also argues that the Superior Court "placed all its eggs in one basket, *i.e.*, Patrick Wilds' testimony" in finding that Petitioner was the initial aggressor despite the fact that Wilds never mentioned anything to detectives on multiple occasions before trial about Petitioner standing in the middle of the street donning a ski mask and attempting to shoot the SUV as it drove away from him. He also argues that the Superior Court emphasized that there were no other witnesses that corroborated Petitioner's account of an arm reaching out of the SUV window before he shot, the court failed to mention or recognize that no other witnesses corroborated Patrick Wilds' testimony regarding Petitioner's first encounter with the SUV where Wilds stated that Petitioner tried to shoot at it but was

determination that trial counsel's decision to forgo the voluntary manslaughter jury instruction was based on a reasonable strategy, nor can this Court say that the Superior Court was unreasonable in its determination that the evidence at trial supported a finding that Petitioner was the initial aggressor and could have retreated. As such, Petitioner is also not entitled to relief under § 2254(d)(2).

### 2. Trial counsel's cumulative errors undermine confidence in Petitioner's first-degree murder conviction.

Petitioner next claims that the cumulative prejudice suffered as a result of trial counsel's objectively unreasonable decisions and errors undermine confidence in his first-degree murder conviction. These include: (1) requesting an involuntary manslaughter instruction, but not a voluntary manslaughter/imperfect self-defense instruction; (2) presenting irreconcilable arguments that destroyed and defeated his reasonable belief self-defense claim, and (3) failing to object to the trial court's duty to retreat instructions.

"The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." Collins v. Secretary of Pennsylvania Dept. of Corrections, 742 F.3d 528, 542 (3d Cir. 2014) (citing Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007)). The Third Circuit has said that

---

unsuccessful because the gun jammed. Petitioner also argues that the Superior Court unreasonably concluded that he had a duty to retreat and that the evidence at trial supported a finding that he could have done so because, according to Petitioner, he subjectively believed there was no avenue of retreat and that if he attempted to retreat it would have only increased the likelihood that the SUV would see him again, placing him in greater danger. In this Court's view, these are all arguments challenging the state courts determinations based on the totality of the evidence presented and not, as Petitioner argues in his Petition, challenges to the state courts' application of the ineffective assistance of counsel standard.

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

<u>Fahy v. Horn</u>, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotation marks and citations omitted).

The Third Circuit treats cumulative error as a discrete claim that defendants must affirmatively raise or else forfeit. *See* <u>Collins</u>, 742 F.3d at 543 (joining other courts that have held a claim of cumulative error is subject to the requirements of exhaustion of state remedies). Here, it is not disputed that Petitioner's cumulative error claim was not exhausted in state court, and because it is now too late for him to return to exhaust the claim, it is procedurally defaulted and not properly before the Court. However, Petitioner urges us to excuse the procedural default under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), because his PCRA counsel provided him with inadequate assistance during his post-conviction proceedings.

The Court need not decide whether Petitioner can establish cause for the procedural default under <u>Martinez</u> because, even reviewing the claim *de novo*, Petitioner has not established prejudice as a result of counsel's alleged conduct. Notwithstanding his claims regarding counsel's irreconcilable arguments and his failure to object to the court's duty to retreat instructions, it is not reasonably probable that the outcome would have been different, *i.e.*, that Petitioner would have been convicted of voluntary manslaughter instead of first-degree murder, given the evidence presented by the Commonwealth that Petitioner was the aggressor, thus defeating a claim of perfect or imperfect self-defense.

**E.      Certificate of Appealability**

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  A certificate of appealability should be denied in this case because jurists of reason would not disagree with the Court's finding that the Petition is time-barred or the Court's resolution of his claims or conclude that they are "adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).  A separate Order will issue.

Dated:  July 5, 2019.

Lisa Pupo Lenihan
United States Magistrate Judge